860 F.2d 1080
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry DOYLE, d/b/a D & S Properties (87-6377) Richard
Scarbrough (88-5034), Defendants-Appellants.
 Nos. 87-6377, 88-5034.
 United States Court of Appeals, Sixth Circuit.
 Oct. 14, 1988.
 
 Before NATHANIEL R. JONES, and RALPH B. GUY, Jr., Circuit Judges, and DOUGLAS W. HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Doyle and Scarbrough appeal their convictions for violations of 18 U.S.C. Sec. 1001 and Sec. 2. Specifically, the two defendants were convicted of making false statements to the Department of Housing and Urban Development (HUD) in connection with Federal Housing Administration (FHA) insured loan applications.[1] Both defendants claim the evidence was insufficient to support their convictions. Additionally, Scarbrough claims the trial judge's failure to give an alibi instruction and his response to a jury question were errors requiring reversal.
 
 
 2
 Upon review we conclude that both convictions should be affirmed.
 
 I.
 
 3
 Doyle and Scarbrough were indicated along with two other individuals, Mae Weeks and Ann Campbell. Both Weeks and Campbell testified for the government at trial. Although Doyle and Scarbrough were acquitted on the conspiracy count contained in the indictment, an understanding of the general scheme is helpful to a resolution of the issues presented on appeal.
 
 
 4
 HUD has a large inventory of houses acquired through foreclosure after loan defaults. These houses are offered for sale to private buyers on either a bulk sale or individual basis. In order to keep the inventory manageable, the houses are usually sold by HUD for considerably less than they will later bring on resale. Many of the houses need extensive repairs, however, and in addition are frequently in urban areas where the likely new buyers are often persons possessing little economic resources, thus making conventional financing difficult if not impossible. "Creative" financing techniques have developed. The typical buyer will have to secure a new Veterans Administration (VA) or FHA loan. In order to do so he will have to present an economic profile adequate to reasonably assure HUD that he will not shortly default and start the whole foreclosure process over again. One of the indications of at least minimal economic stability is the ability to make something other than a token down payment on the house to be purchased. It is a sad reality of life, however, that many persons who can make reasonably regular monthly payments have trouble accumulating a lump sum large enough for a qualifying down payment. As a result, in order to qualify the buyer for an FHA insured mortgage, the seller or the broker sometimes will indicate a substantial down payment was received when such was not the case. The money that is not paid down has to come from somewhere, however, and, as is the case here, the seller can absorb it in the sale price or the real estate broker in the commission. Since this does not really cost the government any money, it is the kind of wrongful activity that is easy to rationalize. However, there are two vices to such a procedure. First, the seller/broker generally exacts a quid pro quo from the buyer for "qualifying" him for the loan. The house is usually sold for more than it would otherwise bring because it is the only way the buyer can purchase a house.[2] Second, by selling houses to people who pay more than they should for them and who really are borderline in their ability to keep up the payment, the whole vicious cycle of sales and defaults is perpetuated. Against this backdrop we now examine specifically what occurred in the instant case.
 
 II.
 
 5
 Larry Doyle and Richard Scarbrough, d/b/a D & S Properties, were volume buyers of defaulted HUD properties which they would purchase with the intention of immediate resale. In the spring of 1983, they purchased a house at 2511 Lisa, Memphis, Tennessee, and another at 1476 May Street, Memphis, Tennessee. As was their custom, the houses were purchased from HUD through Matlock Realty with whom they had an ongoing business relationship.[3] Following the purchase, Matlock Realty acted as the resale agent on behalf of D & S. On July 25, 1983, Stephanie and Charlie Williams signed an offer to purchase the Lisa property. The offer reflected a $1,200 earnest money deposit, but in fact only $100 was paid. The May house was purchased by Freda and Roy Franklin under similar circumstances. The offer to purchase reflected an earnest money deposit of $950 but the Franklins only paid $350. Neither Doyle nor Scarbrough were involved with the paperwork on the initial offers to purchase either the Lisa or May house and neither were present when the sales were closed. Ann Campbell, the real estate sales agent who handled the offer to purchase on the May house, was indicted and pleaded guilty. Mae Weeks, another real estate broker, who was also a defendant and pleaded guilty, handled the purchase offer on the Lisa property.
 
 
 6
 Although both Campbell and Weeks testified for the government at trial, neither directly implicated Doyle or Scarbrough in their testimony. This was entirely a circumstantial evidence case. We note at the outset, however, that a circumstantial evidence case is reviewed in the same manner and under the same standards as is a case proven by direct evidence.
 
 
 7
 In considering a contention that the evidence is insufficient to support a judgment of conviction, an appellate court will reverse the judgment only if it is not supported by substantial and competent evidence. Where, as here, the evidence is wholly circumstantial, the same test applies; and it is not necessary that such evidence remove every reasonable hypothesis except that of guilty.
 
 
 8
 United States v. Eisner, 533 F.2d 987, 989 (6th Cir.), cert. denied, 429 U.S. 919 (1976) (citation omitted). The evidence at trial indicated that the closings for both the Lisa and May houses were handled by Patsy Ray, a legal secretary who worked for attorney Charles Perkins, who represented Doyle and Scarbrough at real estate closings since 1982. Perkins did not attend the Lisa closing but did testify that his file reflected he was at the May closing.[4]
 
 
 9
 By the time of the closing, all of the significant work such as mortgage financing and title surveys has been completed and what is left is primarily the final disbursement of funds and the conveyance of the instruments of title. The principal document generated at the closing is the settlement statement which indicates who receives what monies. It is the settlement statement which is the document central to the appeal since the false statements for which Doyle and Scarbrough were convicted were contained in the settlement statements. It is not disputed that both settlement statements contained false statements of a type falling within the purview of 18 U.S.C. Sec. 1001. The only issue is the knowledge and involvement of Doyle and Scarbrough.
 
 
 10
 It is also undisputed that Scarbrough signed both settlement statements and Doyle signed the real estate contract on the May house. Since neither Scarbrough nor Doyle testified at trial, there is no denial of the signing. The defense efforts at avoidance consisted of having attorney Perkins testify that on occasion Doyle and Scarbrough would sign some documents in blank, although he could not testify specifically that these documents were signed in blank.
 
 
 11
 It is the practice at real estate closings for the sales agent, who is required to hold the earnest money deposit in an escrow account, to come prepared to distribute these proceeds. In connection with the May closing, there was a $600 shortfall in the deposit. Also, the settlement statement reflected that the purchasers paid an additional $137.66 at closing when, in fact, they only paid $100.[5] Thus, a total of $637.66 had to be disbursed from somewhere else. That somewhere else was out of the real estate commission due to Matlock Realty. Instead of being given a check for $1,175, as shown by the settlement statement, Matlock actually received a check for $437.34. The balance (less $100) of $637.66 was subsequently paid to Matlock by Doyle and Scarbrough.[6] In other words, the settlement statement balanced only because of the under-the-table payment by Doyle and Scarbrough to Matlock. Although this money came out of their own pockets, the harm as indicated earlier is in the misrepresentation of the borrower's financial condition.
 
 
 12
 The Lisa closing is a similar story.[7] The $1,200 down payment was never received by Mae Weeks Realty Company and thus at the time of closing there was a $1,200 shortfall. This was made up by an entry on that part of the settlement statement which indicates reductions in the amount due the seller. Under the heading "excess deposit" the amount of $1,200 was entered. This was an obvious falsehood since the deposit was $1,200 short not $1,200 over. The effect of this was simply to reduce by $1,200 the amount Doyle and Scarbrough received for the property. Again, although this money came out of their pockets, there is once again a misrepresentation of the buyer's financial status and, of course, a false statement made to the government.
 
 
 13
 In sum, the defense of Doyle and Scarbrough was that they did not do the paperwork and no one actually testified they saw Scarbrough sign the two settlement statements or Doyle sign the real estate contract. Amassed against the defense was the government's evidence which indicated that Doyle and Scarbrough were large volume, sophisticated buyers and sellers of HUD defaulted properties. They regularly utilized Matlock Realty as well as the closing agents who represented them at these closings. The fact that they made up the difference in the Matlock real estate commission on the May house and "swallowed" the loss in sale price on the Lisa house are facts from which the jury could properly conclude their involvement. Similarly, the jury was free to believe that they had in fact signed with knowledge the documents on which their signatures appeared.
 
 III.
 
 14
 The other two assignments of error raised only by Scarbrough merit little attention. His claim that because he was not present at the closing he should have been entitled to an alibi instruction is totally without merit. The offense charged obviously can be committed without the element of presence and so Scarbrough's whereabouts at the time of the closing are totally immaterial.
 
 
 15
 Similarly, his claim that the trial court did not handle properly a question sent in by the deliberating jury is without merit. The jury sent out a note which read: "We need to see the instructions mentioned on the settlement statement on line 501, excess deposits. What does instruction mean?" The jury was referring to the closing statements for 2511 Lisa which showed the aforementioned "excess deposit" of $1,200. On the line on the settlement statement where "excess deposit" is listed (line 501), there is also the parenthetical phrase "see instructions." The court decided the exhibit spoke for itself and any further explanation would call for the court to provide testimony not in the record or to characterize the state of the record on this issue. The judge wisely decided to not run this risk. Even if the trial judge had elected to explain this entry (and it certainly is not clear from the argument made by counsel what they thought the explanation should be), it would have merely let the jury know that if the seller received a deposit in excess of that shown under buyer's credits, that there was to be a deduction from the amount paid to the seller. Since the "excess deposit" entry here was false, the information requested by the jury would have been of no help to them.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Douglas W. Hillman, Chief Judge, United States District Court, Western District of Michigan, sitting by designation
 
 
 [1]
 Doyle was convicted of one count and Scarbrough of two counts
 
 
 [2]
 For example, here the two houses in question were purchased from HUD for $11,240 and $8,500 and sold for $29,500 and $23,500 respectively
 
 
 [3]
 Although broker Laverne Matlock's name appeared on the offers to purchase, she testified at trial that she did not sign the offers
 
 
 [4]
 Perkins testified he does over 500 closings a year and remembers little about the details since all of the paperwork is done by Patsy Ray
 
 
 [5]
 The record is confusing on these sums because the Franklins paid in cash, received no receipt, signed contracts in blank, and are vague on what they actually paid in. We credit the testimony of Laverne Matlock and her records as to the actual amounts paid by the Franklins or at least as to the amount to be offset against her total commission whether such monies were paid in or not. Matlock did issue a check from her escrow account to the closing attorney, Perkins, for $350
 
 
 [6]
 The record offers no explanation for why the commission balance payment from Doyle and Scarbrough was $100 short
 
 
 [7]
 Only Scarbrough whose signature appears on the Lisa settlement statement was convicted relative to the Lisa property